Louis Dennis v. The State.

No. 9513.    Delivered June 24, 1925.

Rehearing. Denied State October 21, 1925.

1.—Murder—Jury—Voir Dire Examination—Latitude of.

Where on a trial for murder, on their voir dire examination, a number of veniremen stated that they had sat on juries in capital cases in Nacogdoches County, before. Appellant then asked them to state what cases, and the court refused to permit them to answer. In this the court erred. In the examination of jurors on their voir dire in capital cases, broad latitude should be allowed, to enable appellant to intelligently use his peremptory challenges, but in view of the fact that appellant's bill does not affirmatively show that his peremptory challenges were exhausted, we would not reverse on account of this error. See Moore v. State, 265 S. W. 385 and other cases cited.

2.—Same—Evidence—Erroneously Admitted.

Where the state was permitted to prove that the deceased, with others went to the home of appellant late at night, looking for Em Teagle, with no warrant or other legal authority to arrest her, such evidence was erroneously admitted. Appellant could not have been bound by the motive, intent, or purpose of parties coming to his house, at night, armed with shot guns and pistols, when he was not aware of such motives, intent and purpose. Following Bradley v. State, 60 Tex. Crim. Rep., 399 and other cases cited.

3.—Same—Evidence—Not Relevant—Improperly Admitted.

Where the state was permitted to prove by Mrs. Smith, that she had a conversation with one Em Teagle, at appellant's home, on the same afternoon and prior to the homicide, which was heard by appellant, the court committed error. Appellant was in no manner involved in nor a party to such conversation, and it could serve no purpose in the case, except to engender race prejudice. Just how the fact that the Teagle woman sauced Mrs. Smith would justify a party of six armed men in going to appellant's home, and demanding the right to invade it, and search for the Teagle woman, is not apparent to us.

4.—Same—Evidence—Cross-Examination of Accused—Improper.

Where the state, on a trial for murder was permitted to ask appellant why he didn't go where his wife was when the difficulty occurred, was tantamount to asking him why he did not retreat, and was error. The law does not place the duty or the burden upon a citizen of Texas to retreat, in order to avoid the necessity of killing his assailant. That being true, it follows that the state would not be authorized to prove by him that he failed to retreat and to use this, as a circumstance to impinge upon his perfect right of self-defense.

5.—Same—Change of Court—Failure to Submit Art. 1106, P. C., Error.

Where the evidence discloses that a band of armed men invaded the home of appellant in the dead hour of night, demanded admittance to his room, and on being refused the deceased kicked his door in, and that a pistol was lying under, or beside deceased when he fell, the learned trial judge was in error in refusing to submit Art. 1106 of the P. C. Following McMichael v. State, 46 Tex. Crim. Rep. 422 and other cases cited by appellant.

**6.—Same—Evidence—Held Insufficient.**

Viewing this case from all the facts developed, it is difficult to see how an impartial mind can reach the conclusion that it did not appear to the appellant, viewed from his standpoint at least, that the deceased, and those with him were about to kill the defendant, or some other person with the defendant, or to do them some serious bodily injury, and we would be very reluctant to hold that the facts are sufficient to show any offense.

ON REHEARING.

**7.—Same—Evidence—Declarations of Third Parties—Not Admissible.**

Where the state, on a trial for murder, was permitted to prove statements of the witness Wynne made to witness Harrell before they went to appellant's house, as to their purpose in so doing, was erroneously admitted. Appellant knew nothing of this conversation, the law authorized him to act upon the facts within his knowledge. It is a sound rule that one acting in his own defense, is not to be affected by the motives of others, unknown and undisclosed to him. This rule has always been adhered to by this court, without departure. See many decisions collated by Mr. Branch in his Ann. P. C., Sec. 1930.

**8.—Same—Evidence—On Reconsideration—Held, Admissible.**

Upon reconsideration it is believed that the testimony of Mrs. Smith to the effect that Em Teagle made to her the remarks, as set out in our original opinion, were not improperly received in evidence. If made in the presence and hearing of the appellant, they might have been regarded as furnishing some explanation to the appellant of the conduct of deceased, just prior to the killing.

Appeal from the District Court of Nacogdoches County. Tried below before the Hon. C. A. Hodges, Judge.

Appeal from a conviction of murder; penalty, twenty years in the penitentiary.

The opinion states the case.

Supporting the contention that the court erred in failing to submit in his charge, Art. 1106 of the P. C. appellant cites:

McMichael v. State, 46 Tex. Crim. Rep. 422; Scott v. State, 10 Tex. Crim. App. 964; Ward v. State, 30 Tex. Crim. Rep. 687; Hall v. State, 4 Tex. Crim. App. 219; Newman v. State, 126 S. W., 578.

*Seale & Denman,* for appellant.

*Adams & Moore,* private prosecutors; *Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

BERRY, JUDGE.—The appellant was convicted in the district court of Nacogdoches County of the offense of murder and his punishment assessed at confinement in the penitentiary for a term of twenty years.

The State's testimony shows that George Teagle and his wife, Em Teagle, are negroes and that they were making a crop on the place of Mrs. Smith, a white woman, in Nacogdoches county and that on the afternoon before the killing occurred that night, Mrs. Smith had a conversation with Em Teagle which is alleged to have occurred in the presence of the appellant. We quote the following as Mrs. Smith's version of this conversation:

"When I went up and talked to Em, Buster or Louis Dennis could hear it. I just went to the house and asked her if the children were there eating dinner, and to put them back in the field and pick cotton; and she said she wasn't going to do it; that she didn't have to do it; that she had done said what she was going to do, and she didn't have to do it and she would do as she pleased; and she was saucy along with it. Her language was rough. She just said, "No damn white trash couldn't make her do anything;" * * * I afterwards saw Mr. Wynne and had a conversation with him."

After this conversation it seems that the negro woman, Em Teagle, the appellant and possibly some other negroes left the place and went across the river into San Augustine County. The Mr. Wynne referred to, was the party killed that night and he was at that time constable of the precinct and seemed to have been employed by Mrs. Smith to look after the hands in gathering the crops. After the conversation between Mr. Wynne and Mrs. Smith, Mr. Wynne, the deceased, seems to have enlisted the aid of other parties and some 4 of them armed themselves, two having shotguns and two having pistols, and six of them went to the crossing on the river where it was assumed that Em Teagle and the appellant and the other negroes would come back into Nacogdoches county during the night. For some reason, appellant and Em Teagle and the others did not cross the river at the bridge where deceased and his party were waiting for them. Deceased and his party remained at the river until about 9':30 o'clock and proceeded from there to the home of the appellant. Upon reaching the home of the appellant the facts show that some of the six men went in the house and had a brief conversation with the appellant asking him if Em Teagle was there, and to this question he answered in the negative. These parties then went back to the car where the deceased was and reported to him and he got out of the car and several of the other parties got out of the car and some of them went to one part of the house and some to another and according to the State's witness Bluford Menefee, the deceased walked in the house, went in the hall, knocked on the door where appellant was in bed with his wife and where the negro woman, Em Teagle, and a baby girl of the appellant were sleeping in another bed and when he knocked on the door said:

"Cap, this is the constable, get up and light a lamp, we want to get old Em; we are not going to bother any of you, any of you folks."

And the appellant got up but didn't light a lamp; and they lit a lamp across the hall in the other room and the deceased told them that he didn't want to look in that room but in the other room, and they never did light a lamp in the other room; and the negroes were heard moving around in that room and Mr. Wynne knocked on the door again, like ordinary knocking on the door, and the door flew open and deceased was shot.

It was appellant's version of the affair that these parties went to his house about eleven o'clock at night and that each of them was unknown to him and that one of the parties kicked the door open and the shot was fired by appellant in the direction of where the door was kicked and the deceased killed.

There is no suggestion in this record that the deceased had any warrant of arrest or other papers of any character authorizing him to arrest any party in appellant's home or to search the house for any purpose. On the contrary, the record affirmatively discloses the fact that deceased and his party were naked trespassers who in the quiet hours of the night when appellant was at home in bed with his wife, invaded his home and after being informed that the party for whom they were looking was not at his home, insisted on going through his house with the positive declaration that they wanted to get old Em.

It was also in evidence from the sheriff of Nacogdoches County and from members of the grand jury, that various members of the party who were with the deceased that night had made the statement on various occasions that deceased kicked the door before the shot was fired.

Appellant assigns various errors, but in the view we take of the case, it is not necessary to discuss many of them. By proper bill of exceptions, the appellant shows that two of the veniremen while being examined on their voir dire, stated that they had sat on juries in capital cases prior to this case in the district court of Nacogdoches County. Whereupon the defendant in order to test their qualification as jurors and in order to determine whether or not he should use his peremptory challenge on said jurors asked them what capital cases they had heretofore served as jurors on, in said county, and the trial court refused to allow appellant to ask these jurors that question. This action of the court, we think was error. A peremptory challenge is a right given by law to the appellant under which he may excuse for any reason sufficient to him, any member of the venire called to try his case. The peremptory challenge therefore partakes of the nature of a valuable right granted by the State. Under it he may

challenge for any reason deemed sufficient by him, or he may not exercise the challenge at all, if to his mind it seems best not to do so. Under these circumstances, it is apparent that great latitude should be allowed a party in examining veniremen in order that he may determine in his own mind whether or not he desires to have said veniremen serve on his jury. Moore v. State, 265 S. W. 385; Nelser v. State, 257 S. W., 1097; Welk v. State, 257 S. W., 1098; Reich v. State, 251 S. W. 1072; Bennett v. State, 261 S. W., 1036; Benson v. State, 254 S. W., 793.

The information which appellant sought from these veniremen for ought we can say might have been well calculated to have enabled him to have intelligently exercised his premptory challenge. Various things might have entered into the trial of a former case that would have enabled the appellant to have intelligently passed upon the desirability of the jurors in the instant case. We think under the authorities above cited, under the facts of this case that the appellant was entitled to elicit the information sought by the question and that the trial court was in error in refusing to permit the question to be asked, but as the bill does not show that appellant exhausted his challanges or that any injury occurred by reason of the refusal to permit the question, we would not reverse on account of this error.

Complaint is made at the court's action in permitting the State to prove by the witness, Harrell, that the deceased was looking for Em Teagle when they went to the home of appellant. This testimony should have been excluded. Appellant could not be bound by the motive, intent and purpose of the parties in going to his house at night armed with shot guns and pistols, when he was not aware of such motive, intent and purpose. Bradley v. State, 60 Tex. Crim. Rep. 399; Bryin v. State, 47 Tex. Crim. Rep. 146; Tillman v. State, 51 Tex. Crim. 204; Patterson v. State, 60 S. W., 559; Roquemore v. State, 129 S. W., 1120.

Complaint is made at the court's action in permitting the witness Mrs. Smith to testify to the conversation she had with the woman, Em Teagle, in the presence of the appellant and in permitting her to detail said conversation and to testify that the Teagle woman was saucy to her at that time. This testimony could serve no purpose in the case except to engender race prejudice and inflame the minds of the jury against the appellant. The record affirmatively shows that appellant was nothing more than a mere by-stander at the time of this conversation, that he was not spoken to or in any manner drawn into the conversation by either parties to it and nothing is disclosed by the conversation that would in any manner have warranted his taking part therein. It is also true that the conversation was not admissible because it was irrelevant and immaterial to any

issue involved in this case. Just how the fact that the Teagle woman sauced Mrs. Smith would in any manner justify a party of six men arming themselves and going at night to the appellant's home and demanding the right to invade it and search it for this Teagle woman is not disclosed by this record.

Appellant also complains at the court's action in permitting the State to ask the appellant while a witness in his own behalf why he didn't go where his wife was when the difficulty occurred. It is appellant's contention that this was tantamount to allowing the State to ask the appellant why he did not retreat. We think appellant's contention in this respect is correct. The law does not place the duty or the burden upon a citizen of Texas to retreat in order to avoid the necessity of killing his assailant. Many authorities will be found among the reports of this court upholding this principle; then if he is not required to retreat it follows that the State would not be authorized to prove by him that he failed to retreat and to use this as a circumstance to impinge upon his perfect right of self-defense.

Appellant also contends that the court should have charged Art. 1106 of the P. C., in this case. The evidence as detailed above shows that the deceased and the posse with him went to the defendant's home at night and the defendant's testimony and that of his witnesses show that the deceased and those with him came into his house armed with shotguns and pistols and that the defendant saw them coming in thus armed. The record further discloses that they came into his house and demanded that he light a lamp and advised him that they were there for the purpose of getting old Em who was at the time a guest in his house. And the testimony further clearly, at least from the defendant's standpoint, shows that the deceased demanded that the door to defendant's bed room be opened and upon appellant's refusing to open it that he kicked the door. It is further in evidence from one of the State's witnesses that a small pistol was lying under or beside deceased when he fell. Under these circumstances, we think it clear that Art. 1106 of the P. C. should have been charged. As supporting this contention, appellant cites the following cases, which we think sustain his contention: McMichael v. State, 46 Tex. Crim. Rep. 422; Scott v. State, 10 Tex. Crim. Rep. 964; Ward v. State, 30 Tex. Crim. Rep. 687; Hall v. State, 4 Tex. Crim. Rep. 219; Newman v. State, 126 S. W., 578.

It was clearly the right of the appellant to protect himself and those of his household against any act of the deceased and those accompanying him from which it reasonably appeared to the appellant that it was the purpose and intent of such persons or either of them to commit murder or to inflict serious bodily injury on the appellant or some member of his household. Viewing this case from all the facts developed it is difficult to see how any impartial mind can reach

the conclusion that it did not appear to the appellant, viewed from his standpoint, at least, that the deceased and those with him were about to kill the defendant or some other person with the defendant, or to do them some serious bodily injury, and on the testimony adduced on the trial we would be very reluctant to hold that the facts are sufficient to show an offense.

For the errors above mentioned, it is our opinion that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—According to the evidence, Em Teagle, a negro woman and wife of George Teagle, a neighbor of the appellant, used in the hearing of the appellant, some impudent language to Mrs. Smith a white woman. The deceased, Wynne, was a constable of the precinct and an advisor of Mrs. Smith. Circumstances suggest that the incident was reported to Wynne by Mrs. Smith. Wynne gathered a company of four men, besides himself, and after going to the home of George Teagle and taking therefrom the guns that were found upon the premises, went at night to the home of the appellant after he and his family had retired, for the purpose of arresting Em Teagle. No complaint had been filed against her, and in the possession of the officers was no process for her arrest and no search-warrant. She was chargeable with no offense save that growing out of the alleged impudence to Mrs. Smith, the occurrence of which was a controverted issue. The appellant, when called out of his bed, denied that Em Teagle was in his house. This was controverted. As a matter of fact, she and her baby were there; also appellant's wife. The deceased and his companions insisted that the woman, Em Teagle, was in the house and demanded that it be searched At least two members of the party had pistols in their possession. There were guns in the car which, according to the appellant, were in possession of the parties who were demanding admission to his residence. While the deceased was at the door which was opened, a shot was fired by the appellant from inside the house and the deceased was killed.

The State's witnesses claim that the deceased did not open the door but merely knocked upon it. Appellant's testimony was to the effect that the deceased kicked the door open. Upon that issue the State's witnesses were impeached by contradictory statements testified to by

the sheriff, by members of the grand jury and others. Appellant, in his testimony, disclaimed knowledge of the identity of the parties and said that they did not ask for Em Teagle but for George Teagle, her husband. During the transaction, appellant's wife became very much excited and alarmed and expressed fears of death at the hands of the parties who were on the premises.

The offense, if any, against Em Teagle was a trivial one. The conduct of the constable and others seems out of harmony with the mission on which it is claimed they were engaged. Their manner, their arms and their attitude, even from the State's testimony were calculated to alarm the appellant and his family and to put them in fear of injury. Even if the purpose of the posse was to make an arrest of the negro woman, we are aware of no law which, for the alleged offense, would have justified the manner in which it was undertaken; nor under the circumstances, the making of the arrest without process. The appellant's act, whether viewed from his standpoint or that of the State, was within his rights in denying admission to his house. He testified that the posse did not announce their purpose nor declare that they were officers, and that these facts were unknown to him.

In this state of the record, the statements of Wynne to the witness Harrell before they came to the appellant's home were manifestly improperly received. The law authorized him to act upon the facts within his knowledge. There is no testimony and no contention that he heard or was in a position to hear Wynne tell Harrell that he was going to the appellant's home to make an arrest of Em Teagle. In holding this testimony improper and under the facts of the case prejudicial, this court, in the original opinion, announced, we think, a correct legal proposition supported by sound reason and numerous precedents. That principle is, that one acting in the defense of his person or his home, is not to be affected by the motives of others unknown and undisclosed to him. This is announced in terse and pertinent language of Presiding Judge White of this court in Brumley's case, 21 Tex. App. 240, in which are cited both judicial decisions and text-writers. This principle has been adhered to by this court, so far as we are aware, without departure, as is illustrated by many decisions collated by Mr. Branch in his Ann. Tex. P. C., Sec. 1930.

Upon reflection, it is believed that the testimony of Mrs. Smith to the effect that Em Teagle made to her, within the hearing of the appellant, the remarks which Mrs. Smith imputed to Em Teagle, as set out in the original opinion, were not improperly received in evidence. That the remarks were made within the hearing of the appellant, it is true, was controverted, but if the jury believed that he did hear them, they might have been regarded as furnishing some

explanation to the appellant of the conduct of the deceased immediately before he was killed.

According to the appellant's testimony, all members of the posse were armed. The State's evidence is affirmative to the effect that the deceased and one other were armed with pistols, and to the effect that in the automobile some forty feet from the appellant's house there were several shotguns. Whether these guns, at the time the fatal shot was fired, were in the hands of the members of the posse is converted. The use of weapons under the circumstances, we think, rendered it incumbent upon the court to instruct the jury in accord with Art. 1106, P. C., wherein it is said in substance that where the assailant is using a deadly weapon, the legal presumption prevails that he intended to inflict injury. The nature of the case, that is, the evidence adduced is not such as to warrant our holding that in failing to embrace the substance of Art. 1106 in the charge, there was an absence of injury to the accused.

After a careful examination of the record, we are constrained to hold that the motion for rehearing should be overruled, which is accordingly done.

*Overruled.*